UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDALL R.,[1] | )<br>) |
| Plaintiff, | ) No. 22-cv-6204<br>) |
| v. | ) Magistrate Judge Keri L. Holleb Hotaling<br>) |
| MARTIN J. O'MALLEY, Commissioner of the Social Security Administration,[2] | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Randall R. ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his Disability Insurance Benefits ("DIB"). The parties have filed cross motions for summary judgment.[3] For the reasons detailed below, the Court grants Plaintiff's motion for summary judgment [Dkt. 13], denies the Commissioner's motion for summary judgment [Dkt. 15], and remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

I.  **BACKGROUND**

a.  **Procedural History**

On May 18, 2020, Plaintiff protectively filed a Title II application for DIB, alleging disability as of March 13, 2020. [Administrative Record ("R.") 13.] Plaintiff's application was denied initially and upon reconsideration. *Id*. Plaintiff appealed the denial and requested an Administrative Hearing, which was held via online video (apart from the vocational expert who

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] On December 23, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration; pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted as the proper defendant for this action.

[3] Plaintiff has filed a Brief in Support of his Motion to Reverse the Decision of the Commissioner of Social Security [Dkt. 13], which the Court construes as a motion for summary judgment.

appeared telephonically) on November 15, 2021. *Id*. On March 3, 2022, the ALJ issued a decision concluding that Plaintiff had not established he was disabled during the period from her onset date through the date of the ALJ's decision. [R. 13-29.] Plaintiff requested and was denied Appeals Council review [R. 1-6], rendering the Decision of the Appeals Council the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### b.  Pertinent Medical Background

In May 2020, having previously been diagnosed with Parkinson's disease, Plaintiff presented to neurologist Dr. Bernadette Schoneburg, M.D., with reports of significant fatigue and limited improvement with a trial of Levodopa, a medication used to treat slowness of movement that is a symptom of Parkinson's disease. [R. 324.] At that time, Dr. Schoneburg observed that Plaintiff demonstrated facial masking[4] and hypophonia;[5] head and chin tremor; constant right upper extremity tremor at rest; upper extremity bradykinesia;[6] right hand flexed at the metacarpophalangeal joints; ability to rise from a chair with arms crossed after two attempts; stooped posture; and small-stepped gait with decreased step height. [R. 327.] Dr. Schoneburg increased Plaintiff's dosage of Levodopa. *Id*. At an occupational therapy session in June 2020, Plaintiff incorrectly perceived a dull sensation when tested with a sharp stimulus, and his proprioception (the body's ability to sense movement, action, and location) was reduced on his left side, including his shoulder, forearm, and wrist. [R. 419.] That month, his occupational therapist issued a brace for the right wrist. [R. 410.]

---

[4]   Facial masking refers to diminished facial expressivity that is common in individuals with Parkinson's disease. https://www.parkinson.org/understanding-parkinsons/movement-symptoms/facial-masking (last accessed March 6, 2024).

[5]   Hypophonia is an "abnormally weak voice due to incoordination of the muscles concerned in vocalization." *Stedman's Medical Dictionary* 429620 (27th ed. 2000).

[6]   Bradykinesia refers to "a decrease in spontaneity and movement" common in individuals with Parkinson's disease. *Stedman's Medical Dictionary* 117350 (27th ed. 2000).

In July 2020, Plaintiff reported to Dr. Schoneburg he continued to suffer severe fatigue and that he was sleeping more frequently. [R. 877.] Plaintiff's wife (a registered nurse) felt Plaintiff's symptoms were progressing rapidly. [R. 324, 852, 877.] However, examination findings were unchanged from May 2020. [R. 880.] At a neuropsychological evaluation conducted in November 2020, the examining neuropsychologist observed that Plaintiff dragged his right foot when he ambulated and demonstrated a resting tremor in his right hand. [R. 660.] The examiner noted Plaintiff was fatigued during and after completion of formal testing. *Id*. Plaintiff continued to report fatigue to Dr. Schoneburg in November 2020. [R. 669.] Dr. Schoneburg observed bradykinesia in the upper extremities; resting tremor in the right upper extremity; head and chin tremor; stooped posture; small steps and decreased step height; and decreased right arm swing. [R. 672.] Plaintiff was able to rise from a chair with his arms crossed after two attempts. *Id*. Dr. Schoneburg's examination findings remained unchanged in February 2021, though, at that time, Plaintiff was able to rise from a chair with his arms crossed after one attempt. [R. 621.]

In May 2021, Plaintiff affirmed he had difficulty combing his hair and trimming his beard and required assistance performing those tasks. [R. 852.] He reported he was becoming more forgetful and overwhelmed with basic activities such as reading instructions. *Id*. Examination findings remained unchanged from February 2021. [R. 853.] Dr. Schoneburg prescribed the antidyskinetic medication Amantadine in hopes of relieving/preventing involuntary muscle movements. [R. 854.] In June 2021, Dr. Schoneburg noted no change in findings from February 2021. [R. 853.] In November 2021, Plaintiff reported that his left hand had become more "clumsy." [R. 946.] His wife noticed possible tremors in his left hand, head, and neck. *Id*. Examination findings remained unchanged from June 2021, and Dr. Schoneburg discontinued Amantadine because it had been ineffective. [R. 947-48.]

In March 2021, Dr. Schoneburg drafted a letter in which she noted Plaintiff suffered

3

tremors, rigidity in multiple extremities, and impaired gait. [R. 509-10 at 509.] She found that due to tremor, rigidity, and bradykinesia, Plaintiff had difficulty performing tasks that required gross or dexterous movements and manipulation. [R. 509.] She felt that Plaintiff's motor symptoms interfered with his ability to walk, stand, and perform activities that required fine motor control. *Id*. She wrote that Plaintiff experienced "freezing," or periods where he was unable to initiate movements or ambulation. *Id*. Dr. Schoneburg indicated that side effects of his medication and his autonomic dysfunction produce "frequent dizziness and postural instability, putting him at high fall risk." *Id*. She also opined that the cognitive impairments that resulted from Parkinson's disease affected Plaintiff's ability to perform tasks that required multitasking and tasks that required sustained focus. [R. 510.] Dr. Schoneburg indicated that both Plaintiff's Parkinson's disease itself and the medication he takes for his Parkinson's disease could produce fatigue. *Id*. She also submitted an assessment of Plaintiff's functional capacity ("Parkinsonian Syndrome Medical Source Statement") in which she opined that Plaintiff was unable to lift or carry, perform postural activities, or perform manipulative activities. [R. 511-14.]

In November 2020, consultative physician Dr. Julia Kogan, M.D., examined Plaintiff. [R. 499-506.] Dr. Kogan observed resting tremor in the upper extremities and noted that Plaintiff's gait was slow. [R. 505-06.] Plaintiff demonstrated difficulty getting on and off the examination table; tandem walking; standing and walking on the heels and toes; squatting and arising; and standing from a chair. *Id*. Dr. Kogan opined that Plaintiff suffered mild-to-moderate limitations in lifting and carrying and that fine manipulation and handling were mildly reduced. *Id*.

### c. The ALJ's Decision

On February 3, 2022, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 13-29.] At Step One, the ALJ determined Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 13, 2020. [R. 15.] At Step Two, the ALJ found that

4

Plaintiff had severe impairments of: diabetes mellitus with left retinopathy and macular edema, and Parkinson's Disease. *Id.* The ALJ considered Plaintiff's hereditary hemochromatosis; obstructive sleep apnea; hypertension and temporary orthostatic hypotension; hyperlipidemia; anxiety; and depression to be nonsevere impairments. [R. 15-19.] The ALJ also determined "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment of peripheral neuropathy." [R. 19.] At Step Three, the ALJ specifically analyzed Plaintiff's diabetes and Parkinson's Disease and determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 20.] Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[7] to perform light work with certain limitations. [R. 20-21.] Although the ALJ found Plaintiff unable to perform any past relevant work, at Step Five the ALJ determined there were other jobs existing in significant numbers in the national economy he could perform. [R. 28-29.] Thus, the ALJ found Plaintiff not disabled under the Act. [R. 29.]

## II. SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). "This is not a high threshold; it requires only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (cleaned up) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019)). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts, decide

---

[7] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

questions of credibility, or substitute [our] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citation omitted). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion, which is satisfied by an "adequate[] discuss[ion of] the issues and evidence involved in the claim." *Hess*, 92 F.4th at 676; *Dunn v. Saul*, 794 F. App'x 519, 522 (7th Cir. 2019).

## III. DISCUSSION

Among other things, Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ erred in evaluating the opinions of Plaintiff's treating neurologist, Dr. Schoneburg. The Court agrees.

Dr. Schoneburg has been treating Plaintiff every three months since May of 2020, although he had been seeing a different physician at her clinic since February of 2020. [R. 509.] In March 2021, Dr. Schoneburg completed "Parkinsonian Syndrome Medical Source Statement" about Plaintiff's functionality, as well as drafted a two-page letter further opining on Plaintiff's conditions and limitations. [R. 509-14.] The Court has already summarized Dr. Schoneburg's opinions, *supra* (Section I.b.), and will not do so again here.

The ALJ found Dr. Schoneburg's opinion and explanation inconsistent with other evidence of record, noting that Plaintiff did not demonstrate cognitive impairment at a one-time neurological examination, his fatigue preceded his Parkinson's disease and stemmed from noncompliance with treatment for obstructive sleep apnea, and evidence reflected that he improved and was stable. [R. 26-27.] The ALJ further found that "Dr. Schoneburg lumps all the claimant's presenting symptoms without consideration to what appears to be effective treatment and favorable response to medication and therapy." [R. 27.] The ALJ found Dr. Schoneburg's opinion to be unpersuasive. *Id*.

While the Commissioner argues Dr. Schoneburg's opinion was not a "medical opinion" because Dr. Schoneburg did not identify specific functional "limitations or restrictions" Plaintiff "can still do despite [his] impairments," *see* 20 C.F.R. § 404.1513(a)(2), this argument is a nonstarter. The ALJ called Dr. Schoneburg's letter an "opinion" and treated it as such when analyzing it. [R. 26-27.] Similarly, the ALJ did not rely on Dr. Schoneburg's lack of response to certain questions to disqualify her medical source statement as a medical opinion. Neither of these reasons was advanced by the ALJ and, thus, these are impermissible *post-hoc* rationalizations advanced by the Commissioner. *Id.*; *see Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) ("ALJ's decision cannot be defended on a basis not articulated in her order"); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("We have made clear that what matters are the reasons articulated *by the ALJ*") (emphasis in original); *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) (same).

Under 20 C.F.R. § 404.1520c, an ALJ should determine how the medical opinion evidence of record is (or is not) supportive of and consistent with that opinion. Supportability and consistency are the two most important factors an ALJ must discuss in her decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may not selectively cite and discuss evidence that supports a finding of non-disability. *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014). An ALJ must predicate her decision on all relevant evidence and must explain how she considers evidence that favors a claimant. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018).

Here, the Court finds the ALJ erred by discussing only evidence she believed undermined Dr. Schoneburg's opinion while failing to consider evidence that reasonably supported and was consistent with the opinion. While the ALJ discussed some abnormal findings in her general summary of Plaintiff's medical history [*see* R. 21-25, generally], absent from that summary was any indication of how she considered those abnormal findings, for, in her discussion of Dr.

7

Schoneburg's medical opinion, the ALJ discussed only normal findings. [R. 27.]

Conversely, at every telehealth examination Dr. Schoneburg conducted during the relevant period, Plaintiff held his right hand flexed at the metacarpophalangeal joints, demonstrated a constant resting tremor in the right upper extremity, bradykinesia in the upper extremities, and stooped posture, ambulated with small steps and decreased step height, exhibited diminished right arm swing, and rose from a chair with his arms crossed with difficulty. [R. 327, 621, 672, 853, 880, 947.] Dr. Schoneburg's treatment records also reflect that Plaintiff demonstrated facial masking and hypophonia, with noted facial and chin tremors. [R. 327, 661, 672.] This evidence directly supported the limitations Dr. Schoneburg proposed as well as the explanation she provided for those limitations. [R. 509-10.] Yet the ALJ discussed none of Dr. Schoneburg's abnormal findings in connection with her analysis of Dr. Schoneburg's opinion.

Similarly, the ALJ failed to discuss other medical evidence of record that was consistent with Dr. Schoneburg's opinion and accompanying explanation: at an occupational therapy session, Plaintiff felt a dull sensation when tested with a sharp stimulus and his proprioception was reduced on the left side [R. 419]; the neuropsychologist who evaluated Plaintiff noted he dragged his right foot when he walked, demonstrated a resting tremor in the right hand, and was fatigued throughout the examination [R. 660]; and the consultative medical examiner observed that Plaintiff's gait was slow and that he exhibited difficulty getting on and off of the examination table, tandem walking, standing and walking on the heels and toes, squatting and arising, and standing from a chair [R. 506]. The ALJ omitted any discussion of this consistent evidence when she considered the persuasiveness of Dr. Schoneburg's opinion.

Where an ALJ finds that unfavorable evidence overcomes favorable evidence, she must explain how she determined that unfavorable evidence was more probative or of greater evidentiary value than favorable evidence. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)

8

("[a]lthough the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected") (citation omitted). Unfortunately, the ALJ's summary of medical evidence did not explain how she concluded that unfavorable evidence was more persuasive than the favorable evidence. *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992) (summary of evidence is not equal to substantive analysis of evidence); *see also*, *e.g.*, *Perry v. Colvin*, 945 F. Supp.2d 949, 965-66 (N.D. Ill. 2013) (same).

The Commissioner tries to excuse this omission by arguing that the abnormal findings in Dr. Schoneburg's treatment notes do not require a more limited RFC than the ALJ determined and, in fact, the ALJ's RCF "limitations are not too different" from Dr. Schoneburg's opinion. [Dkt. 16, p. 5.] But again, this is an improper *post-hoc* rationalization – the ALJ found Dr., Schoneburg's opinion to be unpersuasive and did not rely on it in assessing Plaintiff's RFC. [R. 27.] *See Hardy*, 908 F.3d at 313; *Jelinek*, 662 F.3d at 812; *Hanson*, 760 F.3d at 762.

However, even assuming, *arguendo*, the ALJ accounted for Dr. Schoneburg's opinion when formulating the RFC, neither the ALJ nor the Commissioner explain how the "significant impairments in tasks requiring either gross or fine dexterous movements and manipulations" [R. 509] opined by Dr. Schoneburg translated into the ALJ's conclusion that Plaintiff could perform manipulative tasks from one-third-to-two-thirds of the workday. *See* SSR 83-10. Similarly, there is no explanation offered by the ALJ or the Commissioner for how the medical evidence of serious limitations could have reasonably supported the ALJ's finding that Plaintiff could frequently reach or occasionally handle and finger with the right upper extremity, as the ALJ found. [R. 20-21.] Moreover, while the ALJ's RFC limitation to no exposure to hazards might, on its face, appear to potentially address a risk that Plaintiff might fall (which might seem consistent with Dr. Schoneburg's opinion of Plaintiff's fall risk) the Court cannot follow the ALJ's reasoning

9

behind this limitation, because nothing in the record suggests that Plaintiff might be a fall risk only in the presence of workplace hazards. Plaintiff posits that because he was at significant fall risk due to dizziness and postural instability, it follows that he was always a significant fall risk when standing and ambulatory, which the Court finds to be a logical assertion. Thus, it perplexes the Court that the Commissioner argues the ALJ's finding that Plaintiff could perform light work (*i.e.*, stand and walk for six hours in an eight-hour workday while carrying up to 20 pounds per SSR 83-10) is consistent with Dr. Schoneburg's opinion. *See Hess*, 92 F.4th at 676 (ALJ must build logical and accurate bridge from evidence to conclusion).

Additionally, although this issue was barely addressed by Plaintiff, to the extent the ALJ's negative view of Dr. Schoneburg's opinion of Plaintiff's cognitive impairments prejudiced her view of Dr. Schoneburg's opinion on Plaintiff's physical limitations (*see* Plaintiff's assertion on this point at Dkt. 19, p. 5), an ALJ need not accept or reject a physician's opinion in its entirety. *See*, *e.g.*, *Boucher v. Astrue*, No. 1:10-cv-1125-SEB, 2012 WL 5286930, at *4 (S.D. Ind. Oct. 22, 2012) ("the fact that the ALJ stated that he gave 'significant weight' to the testimony of [physician] does not mean that he adopted [physician's] opinion in its entirety"); *Brett D. v. Saul*, No. 19cv8352, 2021 WL 2660753, at *3 (N.D. Ill. June 29, 2021) ("the Court notes that the ALJ did not reject [physician's] opinions in their entirety"); *Williams v. Astrue*, No. CIV. 11-873-CJP, 2012 WL 1969329, at *7 (S.D. Ill. June 1, 2012) ("it is clear that the ALJ did not accept [physician's] opinion in its entirety"). While the Court is not convinced the ALJ "threw the baby out with the bathwater," so to speak (*i.e.*, made a blanket rejection of Dr. Schoneburg's opinion based on her rejection of certain parts of the opinion), the ALJ should take care on remand to address each of the various parts of Dr. Schoneburg's opinions.

Next, the Court finds the ALJ over-relied on the fact Plaintiff's Parkinson's disease was stable and even improved with treatment as wholly undercutting Dr. Schoneburg's opinion of

disabling physical limitations. While an individual's improvement is a relevant consideration under the regulations, such improvement is relevant only to the extent it restores a claimant's ability to engage in substantial gainful activity. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v); SSR 16-3p, 2017 WL 5180304, at *8; *Allensworth v. Colvin*, 814 F.3d 831, 834 (7th Cir. 2016); *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014). "There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce…" *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Although Dr. Schoneburg noted that Plaintiff experienced mild (ten percent) improvement with treatment [*see, e.g.*, R. 324], and also characterized Plaintiff's Parkinson's disease as "stable," neither a ten-percent improvement nor stability of condition indicates improvement such that Plaintiff could enter the workforce; a stable impairment can still be disabling. *Murphy*, 759 F.3d at 818-19. It appears to be so here because Dr. Schoneburg, an expert in treating Parkinson's disease and its symptoms, concluded that Plaintiff's symptoms were sufficiently severe to preclude full-time employment – a conclusion also reflected in her examination results/treatment notes. [R. 509; 621.] Thus, the Court finds the ALJ's conclusion that marginal improvement contradicted Dr. Schoneburg's opinion and established Plaintiff could perform full-time work was a result of the ALJ's impermissible substitution of her opinion for that of Dr. Schoneburg. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

Ultimately, without an explanation of how she weighed the favorable and unfavorable findings and determined that the unfavorable findings were conclusive as to Plaintiff's overall functional capacity, the Court cannot discern how the ALJ reached her decision. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The presence of evidence that contradicts the ALJ's decision is of particular relevance, where, as here, the ALJ did not explain what weight she accorded that evidence or why she believed the evidence she cited to find Dr. Schoneburg's opinion unpersuasive was more reliable than evidence that supported finding the opinion to be persuasive. *Zurawski*,

245 F.3d at 889. Upon remand, the ALJ should explain how she considered all relevant evidence when she evaluated Dr. Schoneburg's opinion, not only the evidence she believed undermined the opinion.

Additionally, although the Court has not touched upon it within this opinion, the ALJ should address the interplay between Plaintiff's Parkinson's disease and his fatigue.

## IV. CONCLUSION

Based on the foregoing, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. The Court grants Plaintiff's motion for summary judgment [Dkt. 13] and denies the Commissioner's motion for summary judgment [Dkt. 15].

**ENTERED: March 13, 2024**

                                                Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge